UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TYREK MONTEZ ARRINGTON,<br><br>Defendant. | Crim. Action No. TDC-19-0532<br>Civil Action No. TDC-24-0794 |

**MEMORANDUM OPINION**

Defendant Tyrek Montez Arrington has filed a Motion to Vacate, Set Aside, or Correct the Sentence pursuant to 28 U.S.C. § 2255 ("the § 2255 Motion") in which he seeks to collaterally attack his 2021 conviction and sentence in this Court. For the reasons set forth below, the § 2255 Motion will be DENIED IN PART, and the Court will appoint counsel and hold an evidentiary hearing before resolving the remaining issue.

**BACKGROUND**

On April 7, 2021, Arrington was convicted after a jury trial of interference with interstate commerce by robbery ("Hobbs Act robbery"), in violation of 18 U.S.C. § 1951(a) ("Count 1"); using, carrying, brandishing, and discharging a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) ("Count 2"); and possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1) ("Count 3"), arising from an armed robbery of a CVS Pharmacy in Clinton, Maryland on October 15, 2019. The operative Superseding Indictment stated that the Hobbs Act robbery charged in Count 1 was the underlying crime of violence for purposes of Count 2. On July 29, 2021, the Court sentenced Arrington to terms of imprisonment of 12 months on each of Counts 1 and 3, to run concurrently with each other, and a mandatory minimum

consecutive term of imprisonment of 120 months on Count 2, for a total sentence of 132 months. On August 3, 2021, Arrington filed a notice of appeal to the United States Court of Appeals for the Fourth Circuit, which affirmed his conviction on July 25, 2023.

## DISCUSSION

In the § 2255 Motion, Arrington argues that: (1) his convictions on Counts 2 and 3 should be vacated because the criminal statutes under lying those charges, 18 U.S.C § 922(g)(1) and 18 U.S.C. § 924(c), violate the Second Amendment to the United States Constitution, both facially and as applied to him; (2) his trial counsel rendered ineffective assistance of counsel by failing to object to the Court's jury instruction on Count 1 because it did not require the Government to prove specific intent; (3) his trial counsel rendered ineffective assistance of counsel by failing to argue that that there was insufficient evidence to prove that Arrington had specific intent to commit Hobbs Act robbery; (4) his trial counsel rendered ineffective assistance of counsel by failing to argue that Arrington's conviction on Count 2 was based on an invalid predicate crime of violence, the Hobbs Act robbery charged in Count 1, because the jury was not instructed on specific intent in relation to that offense; and (5) his trial counsel rendered ineffective assistance of counsel by conceding Arrington's guilt on Counts 1 and 3.

### I.       Legal Standard

A prisoner in federal custody may move to vacate, set aside, or correct the judgment or sentence on the basis that: (1) the judgment was rendered without jurisdiction; (2) the conviction or sentence was imposed in violation of the Constitution or laws of the United States; (3) the sentence was not authorized by law; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a), (b) (2018). If the Court finds that "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to

collateral attack," then "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id.* § 2255(b). The prisoner bears the burden of proof and must establish the claim by a preponderance of the evidence. *See Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

In § 2255 proceedings, the Court must consider whether an evidentiary hearing is warranted, and such a hearing is necessary where there are material disputed facts or where the court must make a credibility determination in order to resolve the motion. *See* Rule 8(a), Rules Governing Section 2255 Proceedings for the United States District Courts; *United States v. Witherspoon*, 231 F.3d 923, 926-27 (4th Cir. 2000). However, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts. Upon review of the § 2255 Motion, the Court finds that no hearing is required to resolve any of Arrington's claims except for the claim relating to the concession of guilt.

**II.     Second Amendment**

Arrington first alleges that the criminal statutes underlying the charges in Counts 2 and 3, 18 U.S.C. § 924(c) and 18 U.S.C. § 922(g)(1), respectively, are unconstitutional under the Second Amendment, both facially and as applied. Under § 922(g)(1), it is unlawful for a person "who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year" to "possess in or affecting commerce" any "firearm or ammunition." 18 U.S.C. § 922(g)(1). Under the relevant portion of § 924(c), "any person who, during and in relation to any crime of violence . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm" is subject to a mandatory minimum term of imprisonment to run consecutively to the sentence for

the crime of violence, including a term of ten years if the firearm was discharged. 18 U.S.C. § 924(c)(1)(A). The statute defines "crime of violence" as "an offense that is a felony" and "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A); *see United States v. Davis*, 139 S. Ct. 2319, 2336 (2019) (holding that the additional definition of "crime of violence" set forth in subsection (B) of § 924(c)(3), known as the "residual clause," is unconstitutionally vague).

In asserting this claim, Arrington relies on *New York State Rifle and Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), in which the United States Supreme Court considered the two-step test that United States Courts of Appeals had generally adopted for assessing Second Amendment claims after *District of Columbia v. Heller*, 554 U.S. 570 (2008). At the first step, the Government could justify its regulation by showing that the challenged law regulates activity outside the scope of the Second Amendment right as originally understood, and if it successfully does so, "then the analysis can stop there; the regulated activity is categorically unprotected." *Bruen*, 142 S. Ct. at 2126. At the second step, courts engaged in a means-end analysis, applying either strict or intermediate scrutiny. *Id.* The *Bruen* Court generally reaffirmed the first step by stating that it "is broadly consistent with *Heller*," but it rejected the means-end second step. *Id.* at 2127. It then adopted a Second Amendment test of considering first, whether the "Second Amendment's plain text covers an individual's conduct," and if so, "the Constitution presumptively protects that conduct." *Id.* at 2129–30. If the regulation covers Second Amendment conduct, rather than engaging in a means-end inquiry, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2130.

At the outset, the Court finds that the facial challenge to 18 U.S.C. § 922(g)(1) is foreclosed by *United States v. Canada*, 103 F.4th 257 (4th Cir. 2024), in which the United States Court of Appeals for the Fourth Circuit specifically held that § 922(g)(1) is facially constitutional. *Id.* at 258-59. In *Canada*, the Fourth Circuit reasoned that "no matter which analytical path" is chosen to evaluate § 922(g)(1), including analyses focusing on the definition of the "people" at step one of *Bruen*, the history of disarming those who threaten public safety at step two of *Bruen*, or the Supreme Court's references in *Bruen* to "law-abiding citizens" and "longstanding prohibitions on the possession of firearms by felons," "they all lead to the same destination: Section 922(g)(1) is facially constitutional." *Id.*

As for the remaining challenges, they fail under both *Bruen* and the Supreme Court's recent holding in *United States v. Rahimi*, 144 S. Ct. 1889 (2024). Under the first step of the *Bruen* analysis, the conduct at issue under both statutes is not protected by the Second Amendment because it does not involve possession of firearms by law-abiding citizens. In *Heller*, in which the Supreme Court first identified an individual right to possess a firearm under the Second Amendment, the Court described that right as "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." 554 U.S. at 635. The Court also specifically stated that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill." *Id.* at 626–27. In *Bruen*, the Court adopted this understanding of the scope of the Second Amendment right when it stated that in *Heller* and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), the Court "recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." *Bruen*, 142 S. Ct. at 2122. While *Bruen* then expanded the right to include possession outside the home for self-defense, *id.* at 2156, it cannot fairly be read to have

expanded the Second Amendment right to citizens who are not law-abiding. In most of its references to the Second Amendment right, it continued to frame it as a right of "law-abiding citizens," including on approximately 11 occasions, and several Justices who joined the majority opinion, including Justice Alito and Justice Kavanaugh, highlighted in concurring opinions their understanding that *Bruen* did not disturb *Heller*'s determination that restrictions on felons possessing firearms are presumptively lawful. *See id.* at 2157 (Alito, J., concurring); *id.* at 2162 (Kavanaugh, J., concurring); *see also id.* at 2189 (Breyer, J., dissenting).

The majority opinion in *Bruen* demonstrated in multiple ways that its redefinition of the Second Amendment test did not overrule or alter *Heller* on this issue. First, it noted that it was not questioning the constitutionality of state laws requiring a permit to carry a gun that provide that the permit "shall issue" if the applicant meets certain eligibility requirements, because those laws "are designed to ensure only that those bearing arms . . . are, in fact, 'law-abiding, responsible citizens." *Id.* at 2138 n.9. Such a finding is inconsistent with the notion that a felon, or a person who is engaged in the commission of a crime of violence, has the same Second Amendment right as a law-abiding citizen. Second, it struck down a New York law that conditioned the issuance of a permit to carry a firearm on the applicant demonstrating "a special need for self-protection" because "it prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." *Id.* at 2156. If *Bruen* had expanded the Second Amendment right to encompass individuals other than law-abiding citizens, it would have had no need to reference "law-abiding citizens" in this manner and would have more explicitly overruled *Heller* on this issue, particularly where the Courts of Appeals have frequently relied on *Heller* on this point separate and apart from the means-end analysis that the Supreme Court rejected in *Bruen*. Thus,

*Bruen* did not expand the Second Amendment right beyond the right of law-abiding citizens to possess a firearm for self-defense.

In *Rahimi*, the Supreme Court upheld the federal criminal statute prohibiting possession of a firearm by an individual who is the subject of a domestic violence court order that includes a finding that the individual presents "a credible threat to the physical safety of [an] intimate partner or child" or "explicitly prohibits the use, attempted use, or threatened use of physical force" against such a partner or child, 18 U.S.C. § 922(g)(8), because at the second step of *Bruen*, "the Nation's historical tradition of firearm regulation" includes laws, such as surety and "going armed" laws, which restricted the possession of firearms by individuals who pose "a clear threat of physical violence to another." *Id.* at 1901.

As to the as-applied challenge to § 922(g)(1), Arrington argues that it is unconstitutional as applied to him because his criminal history does not include any violent offenses. Arrington's criminal record, however, includes a prior conviction for conspiracy to commit robbery in which the defendant and other co-conspirators entered multiple businesses and robbed store employees at gunpoint. *See* Presentence Investigation Report ("PSR") ¶ 25, ECF No. 81. Such conduct plainly places Arrington outside the category of "law-abiding citizens" protected by the Second Amendment, *see Bruen*, 142 S. Ct. at 2156, and within the category of individuals who have presented a "clear threat of physical violence to another" for whom restrictions on firearm possession are within the historical tradition of firearm regulation, *see Rahimi*, 144 S. Ct. at 1901.

Under these same principles, the facial challenge to § 924(c) fails because individuals engaged in possessing, carrying, using, brandishing, or discharging a firearm during and in relation to a "crime of violence," which by definition is a crime including as an element the use, attempted use, or threatened use of physical force, plainly includes at least some individuals who are not

"law-abiding" citizens and who present "a clear threat of physical violence to another." *See id.*; *Bruen*, 142 S. Ct. at 2156 (referencing the Second Amendment right as that of a "law-abiding" citizens); *see also United States v. Mathis*, 932 F.3d 242, 265-66 (4th Cir. 2019) (holding that that Hobbs Act robbery is a crime of violence for purposes of § 924(c) because it has as an element the "use, attempted use, or threatened use of force" pursuant to subsection (A), the "force clause," of § 924(c)).

As for the as-applied challenge to § 924(c), where the conduct underlying Arrington's specific charge consists of discharging a firearm during a robbery at a CVS Pharmacy on October 15, 2019, that conduct specifically places Arrington outside the category of "law-abiding citizens" protected by the Second Amendment and within the category of individuals who have presented a "clear threat of physical violence to another" for whom firearm restrictions are permissible under *Rahimi*. *See* 144 S. Ct. at 1901. Accordingly, the Court rejects Arrington's argument that § 922(g)(1) and § 924(c) are unconstitutional facially and as applied to him.

### III.   Specific Intent

Arrington also asserts that his conviction should be vacated because his trial counsel provided ineffective assistance of counsel by not arguing that Hobbs Act robbery is a specific intent crime and seeking jury instructions and rulings consistent with that argument. The Sixth Amendment to the United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court held that to prevail on a claim of ineffective assistance of counsel, a petitioner must establish two prongs: deficient performance and prejudice. *Id.* at 692.

First, the petitioner must show that counsel's performance was deficient in that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Deficiency exists when "counsel's representation fell below an objective standard of reasonableness" under "prevailing professional norms." *Id.* at 688; *see Wiggins v. Smith*, 539 U.S. 510, 521 (2003). "Judicial scrutiny of counsel's performance must be highly deferential" and apply "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

Second, a petitioner must show prejudice in that the deficient performance by counsel consisted of errors that "were so serious as to deprive the defendant of a fair trial" whose result was reliable. *Id.* at 687. To establish such prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is one "sufficient to undermine confidence in the outcome." *Id.* A petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

Specifically, Arrington argues that his defense counsel were ineffective when they failed to object to the Court's jury instruction on the Hobbs Act robbery charge in Count 1 based on its failure to require proof of specific intent to deprive the victim of property permanently. As to Hobbs Act robbery, the Court instructed the jury that:

9

> In order to prove that the defendant is guilty of Hobbs Act robbery, the Government must establish beyond a reasonable doubt each of the following elements:
>
> First, that the defendant knowingly obtained or took the personal property of another, or from the presence of another;
>
> Second, that the defendant took this property against the victim's will, by actual or threatened force, violence, or fear of injury, whether immediately or in the future; and
>
> Third, that as a result of the defendant's actions, interstate commerce, or an item moving in interstate commerce, was delayed, obstructed, or affected in any way or degree.

4/7/21 Trial Tr. at 555, ECF No. 109. Relatedly, Arrington further argues that his trial counsel acted ineffectively by failing to argue that that there was insufficient evidence to prove that Arrington had such specific intent, and that without the Government proving such specific intent, the Hobbs Act robbery conviction could not serve as the predicate crime of violence for the § 924(c) charge in Count 2.

"[A] general intent crime does not require that the defendant intend the precise purpose or results of the crime but only that the defendant intentionally engage in the actus reus [the physical act] of the crime[.]" *United States v. White*, 670 F.3d 498, 508 (4th Cir. 2012), *abrogated on other grounds by Elonis v. United States*, 135 S. Ct. 2001 (2015). The relevant intent is "the intention to make the bodily movement which constitutes the act which the crime requires." W. LaFave & A. Scott, Substantive Criminal Law § 5.2(e) (3d ed. 2017) (citation omitted). In modern criminal statutes, general intent crimes are usually denoted by the requirement that the defendant "knowingly" performed the proscribed act. *United States v. Bailey*, 444 U.S. 394, 405 (1980) ("In a general sense, 'purpose' corresponds loosely with the common-law concept of specific intent, while 'knowledge' corresponds loosely with the concept of general intent."); *United States v. Stitz*, 877 F.3d 533, 536 (4th Cir. 2017). In contrast, a "specific intent" crime contains "a special mental

element which is required above and beyond any mental state required with respect to the actus reus of the crime." LaFave & Scott, *supra*, § 5.2(e). This heightened requirement typically involves a subjective intent to do or cause harm, such as an intent to deprive someone of property, an intent to kill, or an intent to defraud. *Id.*

Arrington's arguments fail because Hobbs Act robbery requires only general intent, not specific intent. An individual commits a Hobbs Act robbery if that person:

> [I]n any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section . . . .

18 U.S.C. § 1951(a). Under this statute, "robbery" is defined, as relevant here, as "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property." *Id.* § 1951(b)(1). The language of the statute thus provides no basis to conclude that this offense has as an element the "specific intent to permanently deprive the victim of property." § 2255 Mot. at 12, ECF No. 117.

Moreover, although the Fourth Circuit has not specifically addressed this issue, numerous United States Courts of Appeals have held that Hobbs Act robbery is a general intent crime for which the required state of mind is to act knowingly. *See, e.g., United States v. Barrett*, 102 F.4th 60, 78-79 (2d Cir. 2024); *United States v. Stevens*, 70 F.4th 653, 660 (3d Cir. 2023); *United States v. García-Ortiz*, 904 F.3d 102, 108 (1st Cir. 2018); *United States v. Woodruff*, 296 F.3d 1041, 1046-48 (11th Cir. 2002); *United States v. Du Bo*, 186 F.3d 1177, 1179 (9th Cir. 1999). Notably, in *Stevens*, the United States Court of Appeals for the Third Circuit abrogated its prior holding in *United States v. Nedley*, 255 F.2d 350 (3d Cir. 1958), relied upon by Arrington, in which that court

had previously held that Hobbs Act robbery required the Government to prove, based on the common law definition of robbery, a "specific intent to steal personal property taken from the person of another by violence or putting in fear, and with the intention to permanently keep the property so taken." *Nedley*, 255 F.2d at 357. The *Stevens* court found that the holding in *Nedley* was no longer viable based on intervening Supreme Court precedent, *Carter v. United States*, 530 U.S. 255 (2000), which, in finding that the federal crime of bank robbery requires only general intent, "ultimately held that while 'some situations may call for implying a specific intent requirement into statutory text,' where a statute criminalizes 'a forceful taking,' a 'general intent requirement suffices.'" *Stevens*, 70 F.4th at 658 (quoting *Carter*, 530 U.S. at 269). This Court agrees with the reasoning of *Stevens*, including its application of *Carter*, and with the other United States Court of Appeals that have found that Hobbs Act robbery requires only general intent. *See Id.* at 660 (collecting cases and stating that "every other Court of Appeals to have squarely considered this issue has concluded that Hobbs Act robbery is a general-intent crime").

Arrington's reliance on *United States v. Ivey*, 60 F.4th 99 (4th Cir. 2023), does not alter this conclusion. In *Ivey*, the Fourth Circuit, in holding that Hobbs Act robbery is a "crime of violence" that may serve as a predicate offense for purposes of 18 U.S.C. § 924(c), concluded only that "Hobbs Act robbery cannot be committed recklessly but instead requires intentional conduct." *Ivey*, 60 F.4th at 117. This statement is fully consistent with the conclusion that Hobbs Act robbery requires only general intent in the form of knowledge. *See United States v. Scott*, 424 F.3d 431, 435 (4th Cir. 2005) (stating that for a criminal statute requiring a knowing violation of a statute, the jury was properly instructed when it was told that the government must prove that the act was committed "voluntarily and intentionally"); *United States v. Jones*, 735 F.2d 785, 789 (4th Cir. 1984) (stating that a "well-accepted definition of 'knowingly'" is an act done "voluntarily and

intentionally, and not because of mistake or accident or other innocent reason" (citation omitted)). Indeed, in rejecting the contention that Hobbs Act robbery could be committed recklessly, which would prevent it from meeting the definition of "crime of violence" for purposes of § 924(c), the *Ivey* court reasoned that it had to read into the statute an implied scienter requirement, which it stated is "usually a general intent requirement," 60 F.4th at 117, based on "'the common-law rule requiring *mens rea*' to imply an intent element into the statute, unless 'some indication of congressional intent' counsels against it." *Id.* (quoting *Staples v. United States*, 511 U.S. 600, 605–06 (1994)).

In light of the Court's determination that Hobbs Act robbery requires only general intent, Arrington's remaining arguments relating to specific intent necessarily fail. Where the Court has determined that there was no error in the jury instructions, it was not deficient performance, let alone error "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *Strickland*, 466 U.S. at 687, for Arrington's defense counsel to fail to object to jury instructions that did not include an instruction on specific intent, to fail to argue that there was insufficient evidence of specific intent, or to fail to argue that the § 924(c) conviction was invalid because the predicate offense of Hobbs Act robbery failed in light of the lack of evidence or an instruction on specific intent. The Court will therefore deny the § 2255 Motion as to Arrington's ineffective assistance of counsel claims relating to specific intent.

### IV.  Concession of Guilt

Arrington further argues that his trial counsel were ineffective because in their opening and closing arguments, they conceded that Arrington was guilty of an attempted Hobbs Act robbery under Count 1 and of possession of a firearm by a felon under Count 3. Arrington's defense, as advanced by his counsel, focused on seeking to prove that Arrington's conduct amounted only to

an attempted Hobbs Act robbery because that crime, as opposed to a completed Hobbs Act robbery, cannot serve as a predicate "crime of violence" for purposes of the § 924(c) charged in Count 2, which carried a ten-year mandatory minimum sentence to run consecutively to the sentences on any other counts of conviction. *See United States v. Taylor*, 142 S. Ct. 2015, 2020–21 (2022) (holding that attempted Hobbs Act robbery, as distinguished from a completed Hobbs Act robbery, is not a crime of violence for purposes of § 924(c)). In the opening statement, defense counsel stated at various points that Arrington was "guilty of Count 3," 4/6/21 Trial Tr. at 327, ECF No. 108; that as to Count 1, Arrington was "guilty of an attempt but not a substantive crime," *id.* at 328; and that the defense was asking the jury to "only convict Mr. Arrington of attempted Hobbs Act robbery in Count 1" to find him "not guilty of Count 2," and "guilty of Count 3," *id.* at 331. In the closing argument, defense counsel stated that Arrington was "guilty of an attempted Hobbs Act robbery" and "guilty of possession of a firearm," but "because he did not complete the robbery . . . he is not guilty of Count 2." 4/7/21 Trial Tr. at 580.

Although Arrington frames his argument as based on an ineffective assistance of counsel claim, he relies on *McCoy v. Louisiana*, 138 S. Ct. 1500 (2018), a capital case in which the Supreme Court vacated a murder conviction after defense counsel conceded the defendant's guilt at trial as part of a strategy to focus on avoiding the death penalty during the sentencing phase but did so over the defendant's objection. *Id.* at 1507. The Court held that defense counsel's admission of guilt over the defendant's objection violated his Sixth Amendment right to the assistance of counsel because it "blocks the defendant's right to make the fundamental choices about his own defense." *Id.* at 1511. Because the issue is one of the defendant's autonomy and not of counsel's competence, the violation is a structural error, such that the defendant need not establish prejudice,

14

as the Sixth Amendment violation is complete when counsel "usurp[ed] control of an issue within [the defendant's] sole prerogative." *Id.* at 1510–11.

Although, in *McCoy*, the defendant objected on the record to the admission of guilt, *id.* at 1506-07, the Fourth Circuit has recently held that such a statement is not necessary to warrant an evidentiary hearing. *See United States v. Hashimi*, 110 F.4th 621, 630 n.4 (4th Cir. 2024). Rather, an evidentiary hearing on a § 2255 motion based on *McCoy* is required when the defendant puts forth an affidavit stating that he did not consent to the strategy of conceding guilt. *Id.* at 630–32. Ultimately, if trial counsel concludes that conceding guilt to the jury is the wisest path, counsel must consult with the defendant and, if the defendant engages on the issue, "may not 'steer the ship the other way.'" *Id.* at 629 (quoting *McCoy*, 138 S. Ct. at 1509).

Here, Arrington has submitted a verified § 2255 Motion, which is the equivalent of an affidavit, *see* 28 U.S.C. § 1746, in which he asserts that he "debated and argued profusely against [trial counsel] trying to convince [him] that admitting guilty was the best strategy," that trial counsel then stated that they would not admit guilt, but that counsel then "reneged on this agreement on the first day of trial." § 2255 Mot. at 7. In contrast, the Government has represented, after consultation with Arrington's trial counsel, that trial counsel discussed their defense and trial strategy with Arrington, that he approved of it, and that Arrington never objected to it even after the opening statement in which trial counsel conceded certain facts. In light of the factual dispute over whether Arrington consented to the trial strategy of conceding guilt on certain charges, the Court will hold an evidentiary hearing prior to resolving this issue. *See Hashimi*, 110 F.4th at 632. In order to permit Arrington to present his version of the facts and to contest contrary versions, the Court will appoint counsel to represent Arrington at the hearing and in relation to this final issue in the § 2255 Motion.

## V. Certificate of Appealability

A prisoner has no absolute entitlement to appeal a district court's denial of a § 2255 motion. *See* 28 U.S.C. § 2253(c)(1)(B). To appeal this Court's denial of certain claims in Arrington's § 2255 Motion, Arrington must first obtain a certificate of appealability. *Id.* A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). When a district court reaches the merits of a § 2255 motion, a petitioner must demonstrate that "reasonable jurists could debate whether the [claim] should have been resolved in a different manner." *Welch v. United States*, 136 S. Ct. 1257, 1263-64 (2016) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Upon consideration, the Court finds that Arrington has not met this standard as to any of the claims presently resolved and thus will not issue a certificate of appealability as to those claims. Upon resolution of the remaining issue in the § 2255 Motion, Arrington may seek a certificate of appealability from the Fourth Circuit. *See* Fed. R. App. P. 22(b)(1).

## CONCLUSION

For the foregoing reasons, the § 2255 Motion will be DENIED IN PART in that it will be denied as to all claims other than the claim relating to concession of guilt. The Court will decline to issue a certificate of appealability as to the claims presently resolved. A separate Order shall issue.

Date: September 30, 2024

THEODORE D. CHUANG
United States District Judge