UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.

TYREK MONTEZ ARRINGTON,

Defendant.

Crim. Action No. 19-0532-TDC
Civil Action No. 24-0794-TDC

**MEMORANDUM OPINION**

Defendant Tyrek Montez Arrington has filed a Motion to Vacate, Set Aside, or Correct the Sentence pursuant to 28 U.S.C. § 2255 ("the § 2255 Motion") in which he seeks to collaterally attack his 2021 conviction and sentence in this Court. On September 30, 2024, the Court issued a Memorandum Opinion in which it denied the § 2255 Motion as to all claims except for Arrington's argument based on his trial counsel's concession of guilt without his consent, for which the Court deemed an evidentiary hearing necessary. *See United States v. Arrington*, No. TDC-19-0532, 2024 WL 4362160, at *1, *8 (D. Md. Sept. 30, 2024) ("*Arrington I*"). On December 17, 2024, the Court held the evidentiary hearing. For the reasons set forth below and in the Court's previous Memorandum Opinion, the § 2255 Motion will be GRANTED.

**BACKGROUND**

Relevant factual and procedural background is set forth in the Court's September 30, 2024 Memorandum Opinion, which is incorporated here by reference. *See Arrington I*, 2024 WL 4362160, at *1, *7. Following the Court's rulings in *Arrington I*, the remaining issue on the § 2255 Motion is whether Arrington's conviction and sentence should be vacated pursuant to *McCoy*

*v. Louisiana*, 138 S. Ct. 1500 (2018), because at trial, Arrington's counsel conceded guilt on one count without Arrington's consent.

Specifically, in the Indictment, Arrington was charged with three offenses arising from an armed robbery of a CVS Pharmacy in Clinton, Maryland on October 15, 2019: interference with interstate commerce by robbery ("Hobbs Act robbery"), in violation of 18 U.S.C. § 1951(a) ("Count 1"); using, carrying, brandishing, and discharging a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) ("Count 2"); and possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1) ("Count 3"). Arrington alleges that at the jury trial that began on April 5, 2021, his trial counsel conceded his guilt on Count 1 without his consent in that his trial counsel acknowledged in his opening statement that Arrington was guilty of an attempted Hobbs Act robbery, which would support a conviction on Count 1.

At the evidentiary hearing, Arrington's counsel on the § 2255 Motion called three witnesses: John McKenna, Arrington's lead trial counsel; Michael Lawlor, Arrington's second trial counsel; and Arrington. From the testimony and exhibits presented at the hearing, the Court finds the following facts relevant to the resolution of the Motion.

I.      **The Pretrial Conference**

On March 25, 2021, the Court held a pretrial conference attended by Arrington and his lead trial counsel, John McKenna. At the pretrial conference, McKenna informed the Government and the Court that his law firm partner, Michael Lawlor, would be trying the case with him, but Lawlor was not present at the pretrial conference.

At various points during the pretrial conference, McKenna stated that he would acknowledge during the trial that Arrington had committed a crime and that he possessed a firearm at the location of the crime. For example, while discussing the jury instructions, McKenna stated

that "[t]he defense in this case is not going to be that my client wasn't there and didn't commit a crime" and noted that "we've talked to the Government about this." Pretrial Conference ("PTC") Tr. at 29, ECF No. 106. Later in the discussion about the jury instructions, McKenna reiterated that "we're going to stand up in opening statement and tell the jury that our client had a gun, that he was there. So this is not going to be a case turning on forensics." *Id.* at 32. He did not, however, state that the defense would concede guilt on any particular count.

During the pretrial conference, McKenna and Arrington exchanged a handwritten note. At the top of the note, McKenna wrote "We are going to agree you are guilty of poss of the HG but not guilty of the others—right." Hrg. Ex. 6. In his testimony at the evidentiary hearing, McKenna stated that he had no recollection of the exchange of the note but confirmed that "poss" and "HG" must have referred to "possession" and "handgun," respectively. He also agreed that "the others" appeared to refer to the other counts against Arrington. At the bottom of the note, Arrington wrote "I'm not a felon" and "[t]he indictment has approximate time and date right? 14, 15, 16 October. So there for it could have been any of the pharmacies around. It's not guaranteed date or time." Hrg. Ex. 6.

## II.   The Trial

The three-day jury trial commenced on Monday, April 5, 2021 and concluded on Wednesday, April 7, 2021. Arrington was present for all three days of the trial and was represented by McKenna and Lawlor. On the first day of trial, during discussions between the Court and counsel prior to jury selection, Lawlor stated multiple times that he intended to concede Arrington's guilt on Count 1 by acknowledging that Arrington had committed an attempted Hobbs Act robbery. In discussing the language of the verdict form, Lawlor stated that "the Government's theory is that the defendant committed a Hobbs Act robbery" but that "[t]he defense, meanwhile,

3

submits that the Government has failed to prove a committed Hobbs Act robbery, but that the defendant committed an attempted robbery." 4/5/21 Trial Tr. at 21, ECF No. 107. The Court then asked Lawlor if "the defense is going to concede that there was an attempted robbery?" *Id.* Lawlor responded, "We are. I will open on that fact." *Id.* Later in the same discussion about the verdict form, Lawlor confirmed his intent to concede Arrington's guilt on Count 1 when he told the Court:

> [A]s I said, I'm going to stand up in opening statement and concede Mr. Arrington went in there with a gun and attempted to rob the CVS. So that portion of the case will be over five seconds into my opening argument. So there's no real debate there. The debate is whether or not it was a substantive Hobbs Act robbery or merely an attempt.

*Id.* at 31. Lawlor separately explained the significance of this difference when he correctly asserted that if the jury "find[s] an attempted robbery, they cannot convict him of the 924(c)," referring to the charge in Count 2 that carried a mandatory minimum ten-year sentence consecutive to the sentence on any other counts of conviction. *Id.* at 24; *see United States v. Taylor*, 142 S. Ct. 2015, 2020-21 (2022) (holding that an attempted Hobbs Act robbery is not a "crime of violence" for purposes of 18 U.S.C. § 924(c)). He therefore requested that "both in the verdict form and in the [jury] instructions, I think the jury needs to be made clear that if they acquit him of the substantive robbery, and even if they convict him of attempted Hobbs Act robbery, that Hobbs Act robbery is not a crime of violence" and that "he would be necessarily not guilty as a matter of law" on Count 2. 4/5/21 Trial Tr. at 24. Following the discussion about the verdict form, the remainder of the first day of trial consisted of jury selection.

The next day, on April 6, 2021, Lawlor delivered the opening statement on behalf of Arrington in which he conceded Arrington's guilt on both Counts 1 and 3 by stating, "We agree factually and legally that Mr. Arrington is guilty of attempted Hobbs Act robbery, and he is guilty of Count Three." 4/6/21 Trial Tr. at 327, ECF No. 108. As to Count 1, he told the jury that "Mr.

Arrington attempted to commit a robbery" and that "[b]ecause he's guilty of an attempt but not a substantive crime, the judge will explain to you that he's not guilty of Count Two." *Id.* at 329. As to Count 3, he told the jury that "we have stipulated to each and every element of Count Three, possession of that gun . . . He's guilty of that crime . . . . He's guilty of Count Three." *Id.* at 327. At the end of his opening statement, Lawlor asked the jury to "only convict Mr. Arrington of attempted Hobbs Act robbery in Count One, not guilty of Count Two, guilty of Count Three." *Id.* at 331.

On April 7, 2021, the third and final day of the trial, McKenna delivered the closing argument on behalf of Arrington and also conceded Arrington's guilt on Counts 1 and 3, including by stating: "He's guilty of an attempted Hobbs Act robbery, he's guilty of possession of a firearm." 4/7/21 Trial Tr. at 580, ECF No. 109. When McKenna began discussing Count 2, the charge of using, carrying, brandishing, and discharging a firearm during and in relation to a crime of violence, he specifically told the jury that the defense had conceded that Arrington was guilty of attempted Hobbs Act robbery, but not of a completed robbery, because a "completed robbery is a crime of violence of the purposes of Count 2," but "an attempted robbery is not." *Id.* at 581. McKenna later summarized what the defense believed the verdict should be: "Count One, guilty of the attempted . . . Hobbs Act robbery," "[w]ith regard to Count Two, we believe he's not guilty . . . because he is not guilty of the completed robbery, he is not guilty, as a matter of law, of Count Two," and "Count Three, the easiest of all, the one that has been stipulated to, he's guilty." *Id.* at 591.

### III. Evidentiary Hearing

During the evidentiary hearing on December 17, 2024, Arrington testified that prior to the pretrial conference, he did not discuss conceding his guilt on Count 1 with any of his attorneys.

He acknowledged, however, that he did agree to concede guilt on Count 3 prior to the pretrial conference. Arrington further testified that, after Lawlor told the Court that he planned to concede Arrington's guilt on Count 1 on the first day of the trial, Arrington told McKenna that he had not agreed to that concession, to which McKenna stated that it was the best argument they had. He then stated that he was surprised when Lawlor went ahead and conceded his guilt on Count 1 during the opening statement, and he then again told McKenna that he did not agree with the concession. He testified that McKenna again told him that it was the best argument they had. Arrington testified that at that point, where the concession had already been made in front of the jury, he did not think anything could be done about it.

McKenna, for his part, testified that he had multiple conversations with Arrington before the trial but had no recollection of the specific issues discussed. When prompted with records showing that four video conferences, which were the primary means by which defense attorneys and their clients communicated during the COVID-19 pandemic, had been scheduled for him to speak to Arrington on various dates before the pretrial conference, McKenna acknowledged the records but stated that he had no specific recollection of the meetings other than that their general purpose would have been to discuss the evidence and trial strategy. He also acknowledged, based on a similar record, that he participated in a video conference with Arrington March 30, 2021, which was after the pretrial conference but before the first day of trial, but he testified that he had no "specific recollection of what we talked about" on that occasion.

When asked whether he had any recollection of speaking to Arrington about conceding guilt on attempted Hobbs Act robbery, McKenna testified, "I have no memory of having the conversation" but further stated, "I'm sure we did." When asked if Arrington told him not to make the concession, he stated, "I don't recall him ever saying that," and "I don't have a great deal of

memory as to the specifics of the conversations." When asked whether he had discussed with Arrington the plan to concede guilt on the firearm possession charge in Count 3, McKenna stated that he was "sure" that he did, but when asked if Arrington told him not to do so, he stated that he had "no recollection" of Arrington objecting to that concession. McKenna did, however, state that he first learned that Arrington objected to the trial strategy when he was called as a witness at the evidentiary hearing on the § 2255 Motion.

In his testimony at the evidentiary hearing, Lawlor stated that he joined the case close in time to the trial and that his role was to assist McKenna, who was lead counsel for Arrington. Thus, he testified that he had no recollection of any discussions with Arrington before the trial. He also testified that he had no recollection of any conversations he had with Arrington at any other time, including during the trial, and that he had no recollection of discussing with Arrington whether the defense should concede his guilt on attempted Hobbs Act robbery. Lawlor did, however, testify that he did not remember Arrington ever objecting to the concession of guilt on attempted Hobbs Act robbery, whether following his statements on the first day of trial or following his opening statement. Lawlor testified that the first time he became aware that Arrington was opposed to conceding his guilt on Count 1 was when Arrington filed the § 2255 Motion.

## DISCUSSION

In the only unresolved argument in the § 2255 Motion, Arrington asserts that his conviction and sentence should be vacated because at trial, his attorneys conceded his guilt on certain counts without his consent, which constitutes a structural error under *McCoy v. Louisiana*, 138 S. Ct. 1500 (2018). At the evidentiary hearing, Arrington's counsel clarified that Arrington acknowledges that

7

he agreed to concede guilt on Count 3, so this claim is limited to the concession of guilt on attempted Hobbs Act robbery as charged in Count 1.

## I. Legal Standard

A prisoner in federal custody may move to vacate, set aside, or correct a conviction or sentence on the basis that: (1) the judgment was rendered without jurisdiction; (2) the conviction or sentence was imposed in violation of the Constitution or laws of the United States; (3) the sentence was not authorized by law; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a), (b). If the Court finds that "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack," then "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id.* § 2255(b). The prisoner bears the burden of proof and must establish the claim by a preponderance of the evidence. *See Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

## II. Concession of Guilt

Arrington argues that his convictions on Counts 1 and 2 should be vacated because his trial counsel conceded without his consent that he was guilty of attempted Hobbs Act robbery, as charged in Count 1. In *McCoy*, a capital case, the United States Supreme Court vacated a murder conviction after defense counsel conceded the defendant's guilt at trial as part of a strategy to focus on avoiding the death penalty during the sentencing phase but did so over the defendant's objection. *McCoy*, 138 S. Ct. at 1505, 1511–12. Notably, the defendant explicitly objected to the concession when he "protested" it in open court, outside the presence of the jury, and when he "maintain[ed] his innocence" while testifying in his own defense. *Id.* at 1506–07. The Court held that with such "express statements of the client's will to maintain innocence," defense counsel's

admission of guilt over the defendant's objection violates the Sixth Amendment right to the assistance of counsel because it "blocks the defendant's right to make the fundamental choices about his own defense." *Id.* at 1511. Because the issue is one of the defendant's autonomy and not of counsel's competence, the violation is a structural error, such that the defendant need not establish prejudice. *Id.* at 1510–11. Rather, the Sixth Amendment violation is complete when counsel "usurp[s] control of an issue within [the defendant's] sole prerogative." *Id.* at 1511.

In *Florida v. Nixon*, 543 U.S. 175 (2004), however, the Supreme Court held that defense counsel could pursue a strategy of conceding guilt to charges at trial in order to "preserv[e] his credibility in urging leniency during the penalty phase" of the proceedings, where counsel "attempted to explain this strategy to [the defendant] at least three times," but the defendant "was generally unresponsive during their discussions" and "never verbally approved or protested [counsel's] proposed strategy." *Id.* at 181, 192. The Court held that such facts did not give rise to a Sixth Amendment violation because "when a defendant, informed by counsel, neither consents nor objects to the course counsel describes as the most promising means to avert a sentence of death, counsel is not automatically barred from pursuing that course." *Id.* at 178.

In *United States v. Hashimi*, 110 F.4th 621 (4th Cir. 2024), the United States Court of Appeals for the Fourth Circuit summarized the "twin obligations" that *McCoy* and *Nixon* require of defense counsel seeking to concede a criminal defendant's guilt at trial. *Id.* at 628. Specifically, the Fourth Circuit stated that:

> In short, *McCoy* and *Nixon* leave us with a reasonably straightforward rule. If defense counsel assesses conceding guilt to a jury as the wisest path, he has two obligations: He must consult with his client, and, if the client engages, he may not "steer the ship the other way." . . . . If the lawyer violates these rules and thus "usurp[s] control of an issue within [the defendant's] sole prerogative," the remedy is a new trial, regardless of whether prejudice can be demonstrated.

*Id.* at 629 (quoting *McCoy*, 138 S. Ct. at 1509, 1511).

Here, the Court finds that the record developed at the evidentiary hearing does not sufficiently establish that Arrington's trial counsel completed their first obligation under *McCoy* and *Nixon*: "a consultation between defense counsel and client, in which defense counsel may try to persuade a client that conceding guilt is or has become the best course." *Hashimi*, 110 F.4th at 628. At the hearing, Arrington specifically testified that neither McKenna nor Lawlor informed him prior to the start of the trial of the strategy to concede guilt on Count 1. Notably, neither trial counsel directly contradicted this testimony. Although McKenna stated that he must have discussed trial strategy with Arrington, he had absolutely no recollection of the substance of the discussions he had with Arrington prior to trial. Lawlor testified that he joined the case shortly before trial and thus had no discussions with Arrington before the trial started. Significantly, Arrington's testimony is corroborated by the handwritten note, which McKenna acknowledged he exchanged with Arrington during the pretrial conference, that demonstrated that, at least up until that point, the strategy that had been discussed between defense counsel and Arrington was to "agree" that Arrington was "guilty of poss[ession] of the [handgun] but not guilty of the others." Hrg. Ex. 6. As McKenna acknowledged at the hearing, "the others" refers to the other counts in the Indictment, which consisted of Counts 1 and 2. Accordingly, the Court cannot find that defense counsel consulted with Arrington about conceding Count 1 before the pretrial conference.

The Court also cannot find that such a consultation occurred after the pretrial conference but before the concession was made at trial. Arrington testified that after Lawlor told the Court on the first day of trial about his intent to concede Arrington's guilt on Count 1, Arrington objected to this strategy by telling McKenna that it was "not what we had agreed on," but McKenna told him it was the best argument they had. Based on the video conference records, McKenna had only one video meeting with Arrington after the pretrial conference but before the trial began, but

McKenna did not "have any specific recollection of what we talked about," including whether there was any discussion about conceding guilt on Count 1. Again, Lawlor testified that he had no recollection of talking to Arrington prior to the trial and stated that "my suspicion is that I never spoke to Mr. Arrington outside of the courtroom." Although McKenna has stated that, even without a recollection of discussing it, he was "sure" that he discussed a plan to concede Count 1 with Arrington, his level of recall was so limited that the Court cannot rely on this vague statement, and in any event he did not state that such a discussion occurred before trial or the opening statement and did not state that Arrington actually agreed to it at whatever unspecified time it was discussed. Arrington's testimony that no such consultation took place prior to trial or the opening statement is therefore effectively unrebutted. Once the trial began, and Lawlor conceded guilt on Count 1 in his opening statement to the jury, there was no way to retract it, so any after-the-fact consultation would not have satisfied the requirement.

Where the Government has not presented sufficient evidence to demonstrate that trial counsel actually consulted with Arrington about the strategy of conceding guilt on Count 1 before the concession was actually made, and that Arrington either agreed to proceed in that way or failed to engage on the issue, his Sixth Amendment right was violated, and the Court need not resolve whether Arrington objected to the strategy or at least sufficiently engaged with defense counsel on the issue. *See McCoy*, 138 S. Ct. at 1509; *Hashimi*, 110 F.4th at 627-28. In any event, the evidence on what occurred after the concession was made does not provide a basis to undo the failure to consult. Arrington has testified that he twice expressed disagreement with the concession, both after Lawlor's statement on the first day of trial that he intended to concede Count 1 and after the actual concession in the opening statement on the second day of trial. In both instances, Arrington was told by McKenna that the concession was the best available argument. Notably, neither

11

McKenna nor Lawlor directly contradicted this account but instead testified generally that they did not recall Arrington objecting to the concession. Although they each testified that they were unaware that Arrington objected to the concession until the § 2255 Motion was filed, their level of recall of the events was so limited that such statements could not be fairly construed as contradicting Arrington's account. In any event, the Government has offered no evidence that Arrington affirmatively agreed to the concession at any time, that he "was generally unresponsive during their discussions," *Nixon*, 543 U.S. at 181, or that he "stonewalled" the attempts to consult and "refuse[d] to make the concession decision himself" such that trial counsel was free to pursue their proposed strategy, *Hashimi*, 110 F.4th at 629. Thus, where the record does not demonstrate that trial counsel consulted with Arrington about conceding guilt on Count 1 before the concession actually occurred, the Court must find that Arrington's Sixth Amendment right to assistance of counsel was violated. *See McCoy,* 138 S. Ct. at 1509; *Hashimi*, 110 F.4th at 627–28.

In reaching this conclusion, the Court does not find that there was anything unsound about trial counsel's strategy to concede guilt on Count 1, nor does it find that the concession resulted in actual prejudice to Arrington. Rather, having presided over the trial and thus having had the opportunity review the evidence in the case, the Court finds no fault with the trial strategy and does not find that refraining from conceding guilt on attempted Hobbs Act robbery would likely have resulted in a different outcome. Nevertheless, under *McCoy*, the Sixth Amendment violation is a matter of structural error, no showing of prejudice is required, and the remedy is a new trial. *McCoy*, 138 S. Ct. at 1511–12. Here, Arrington's counsel stated at the hearing, and the Court agrees, that the proper remedy is a new trial on Counts 1 and 2 but that Arrington's conviction on Count 3 may stand because Arrington has acknowledged that he agreed to the concession of guilt

on that count. Accordingly, the Court will vacate the convictions and order a new trial as to Counts 1 and 2 only.

## CONCLUSION

For the foregoing reasons, the § 2255 Motion will be GRANTED as to Arrington's claim relating to concession of guilt, the convictions on Counts 1 and 2 will be vacated, and a new trial on those counts will be set. A separate Order shall issue.

Date: March 12, 2025

THEODORE D. CHUANG
United States District Judge